Filed 8/17/22  Marriage of Hart CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of NOOSHIN and DANIEL HART. | |
| | D078836 |
| NOOSHIN HART, | |
| Appellant, | (Super. Ct. No. D553836) |
| v. | |
| DANIEL HART, | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey B. Barton and Margo Lewis Hoy, Judges.  Affirmed as modified.

Beatrice L. Snider and John L. Romaker for Appellant.

Bickford Blado and Botros and Andrew J. Botros for Respondent.

Nooshin Hart (Mother) and Daniel Hart (Father) were divorced in 2018 and share two children, one minor and one adult.  After a judgment denying Mother's request to move away with the minor child, and awarding legal and physical custody to Father, Mother challenges other portions of the judgment: (1) requiring her to have no contact with the minor child for a period of 60 days; (2) limiting her contact with the minor child to conjoint therapy

sessions until "released by the therapist"; (3) allowing daytime visitation only after conjoint therapy is successfully completed; and (4) requiring her to attend individual therapy until her therapist "feels it is no longer needed." Mother does not appeal the denial of her move-away request or the custody award.

With one exception, we conclude that Mother's appeal of the contact and visitation conditions has been rendered moot by superseding visitation orders. The exception is Mother's contention that the court violated Family Code section 3190[1] by ordering her to participate in conjoint and individual therapy for an indefinite duration. Section 3190, subdivision (a), requires that the court-ordered therapy be limited to no more than one year. We therefore modify the portion of the judgment requiring Mother to participate in conjoint and individual therapy indefinitely. We limit the duration of the court-ordered conjoint and individual therapy to one year, subject to entry of a new order on request of a party under subdivision (e). In all other respects, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father married in 1998 and had two children, one born in 2000 and one born in 2007. The parties separated in November 2014, and Father moved out of their residence while Mother and the children remained. When the parties divorced in May 2018, the judgment of dissolution set a date for an evidentiary hearing on custody and visitation issues, and also ordered conjoint therapy for Father and the children. Mother later reported that the children refused to participate in conjoint therapy, and the assigned therapist ended their treatment because the minor child "needed individual therapy first." The minor child only attended a few individual therapy

---

[1]  All further undesignated statutory references are to the Family Code.

2

sessions with another therapist before that therapist ended the sessions for lack of progress. Meanwhile, the custody and visitation hearing was continued to allow time for the therapy process to play out.

In April 2019, Mother requested an order permitting her to move with the minor child to Redlands, California, where the adult child would be attending college. At Father's request, the court appointed a custody evaluator to provide recommendations regarding Mother's request to relocate. (§ 3111.) The evaluator's report was to be submitted in August 2019, but the evaluation was still not done a year after that deadline, partly because Mother refused to participate out of concern about COVID-19.

In September 2020, the court issued an order compelling Mother and the minor to appear at the evaluator's office and instructing the evaluator to follow public health recommendations. However, Mother did not comply with the court's orders and the evaluator resigned, citing ethical concerns after Mother told him that the evaluation process was causing her and the minor child "a great deal of distress[.]" The evaluator informed the parties' counsel that in light of such distress, additional efforts "to complete this evaluation seem both counter-productive for [the minor's] well-being and counter-productive for the completion of an evaluation[.]"

The parties proceeded to trial in October 2020 without the benefit of a custody evaluation and sought resolution of several issues, including custody of the minor child[2] and Mother's request to relocate with the minor to Redlands, California. Evidence introduced at trial included allegations of domestic violence by both parties. Mother and the adult child both stated that Father was physically abusive, but the minor child did not complain of

---

[2] While the case was pending, the adult child reached the age of majority and emancipated.

3

physical abuse. Father denied he was violent with Mother or the children, and testified that Mother had acted violently against him on multiple occasions.

Mother and both children reported that Father was disengaged at times and described incidents in which he "zoned out" and became nonresponsive for extended periods, including while driving. Father denied that such incidents occurred. Mother and both children also described a time when Father did not feed the children while Mother was recovering from surgery. Father said that he "always tr[ied] to have food at home" and that he picked up dinner for the family almost every night on his way home from work.

Text messages introduced at trial showed that when Father attempted to meet with the children post-separation, Mother often said they were unavailable for reasons such as the weather being too hot or rainy, the children being tired or "not ready," and frequent illness. Mother rebuffed Father's attempts to schedule make-up days for these missed visits and repeatedly referred to the children as "my babies." The adult child said that he and the minor did not want to see or speak with Father, but Father said there were times when he spoke with the children directly and they were affectionate or expressed their excitement to spend time with him.

According to both parties' accounts, Mother was very anxious about germs. One therapist who saw Father and the minor child for conjoint therapy said her impression of Mother was that she was "very protective" of the children and was "probably overly involved in [their] life[.]" Another therapist who treated the parties noted that Mother " 'parentifies' " the adult child by giving him responsibility for the minor child.

After trial, the court issued a statement of decision in November 2020, which was incorporated by reference into a judgment dated March 1, 2021 (March 2021 judgment). The court found the allegations of physical abuse by Mother and the adult child not credible, citing among other things a lack of corroboration and the fact that Mother and adult child both previously denied violence in the home.

The court noted "a long pattern by Mother of involving the children in the divorce and causing them to suffer what she then report[ed] as severe emotional distress caused by Father" attempting to see the minor child. The court found that Mother had a "long history" of "infantilizing the children, and parentifying" them. Specifically, the court stated that the text messages regarding Father's visits contradicted Mother's testimony and confirmed her "infantilization of her children." The court expressed concern "that there may be a mental health issue affecting Mother[,]" citing her demeanor while testifying and evidence concerning her credibility. The court observed that Mother "could greatly benefit from treatment."

As for Father, the court found that he "had a detached parenting style and deferred much of the decision making concerning the children to Mother." The court noted that Father failed to prevent Mother's infantilizing and enabled her domination and control of the children. At the same time, the court found that Father appeared to have a good relationship with the children in the two years following separation despite Mother's "thwarting Father's many requests to have contact" with the children during that time.

After enumerating these findings and analyzing relevant factors for evaluating a move-away request, the trial court denied Mother's request to relocate. The court awarded legal and physical custody of the minor child to Father and ordered him to enroll the minor in therapy as soon as possible.

5

To facilitate the transfer of custody, the court also ordered that Mother have no contact with the minor for 60 days following the exchange of custody, and that her contact thereafter be in the presence of a therapist for conjoint therapy "until released by the therapist." The court conditioned Mother's future daytime visitation with the minor on successful completion of conjoint therapy, and then ordered Mother to immediately begin individual therapy, which would continue until her therapist "feels it is no longer needed." The court also ordered Father to immediately attend therapy until his therapist "feels it is no longer needed."

Mother appealed the court's March 2021 judgment. While this appeal was pending, the trial court issued an order on December 7, 2021 (December 2021 order), after a hearing in October 2021, and another order on July 29, 2022 (July 2022 order), after a hearing in May 2022.[3] In the December 2021 order, the court stated it had "exercised its discretion" and ordered that Mother's "current Monday visitation" with the minor child be expanded to include visitation on Saturday mornings for two additional hours, and that "[a]ll visitation shall remain professionally supervised."[4] The court said it would allow these Saturday visits to take place somewhere "other than the supervisor's office." The court also ordered that when the minor child was ready, Mother could be allowed to attend school concerts. After finding that

---

[3]  We grant Father's unopposed motion to augment the record with the July 2022 order. We deny Mother's August 4, 2022 motion to augment the record with documents she filed in the trial court in June 2021 on the grounds that the motion is untimely and these documents are unnecessary to our resolution of this appeal.

[4]  The record on appeal does not include the order granting Monday visitation to Mother, which was apparently issued between the March 2021 judgment and the December 2021 order allowing additional Saturday visitation.

6

"the conjoint therapy has been beneficial" for the minor child, the court ordered that both parents "equally pay" for conjoint therapy costs.

In the July 2022 order, the court granted Mother unsupervised visits with the minor on Mondays and Wednesdays after school until 7:30 p.m. and on Saturdays from 9:00 a.m. to 1:00 p.m., beginning May 4, 2022. The order further stated that beginning May 21, 2022, the Saturday visits would be extended to 6:00 p.m. In issuing this order, the court expressly rejected the recommendation of the conjoint therapist to delay implementation of unsupervised visits.

DISCUSSION

I

As noted, Mother does not challenge the trial court's denial of her move-away request or its award of physical and legal custody to Father. She only challenges aspects of the court's March 2021 judgment limiting her initial contact with the minor child and requiring her to participate in conjoint and individual therapy. Specifically, she argues that the court abused its discretion by barring her from contact with the minor for 60 days and then conditioning daytime visitation on the success of conjoint therapy. She also contends that the court's decision to limit her visitation in those respects was not supported by substantial evidence; the court did not exercise informed discretion; and the court improperly delegated its discretion to the conjoint therapist. Finally, Mother challenges the open-ended duration of the required counseling under section 3190.

Father argues that Mother's appeal has been rendered moot by the December 2021 order granting Mother supervised Saturday morning visits in addition to Monday visits, and the July 2022 order granting Mother

7

unsupervised visits on Mondays, Wednesdays, and Saturdays. As to all but one of the issues Mother raises on appeal, we agree.

Issues in a case that involved actual controversies at the outset may become moot due to intervening events, such that the court can no longer grant effectual relief as to those issues. (*Placer Foreclosure, Inc. v. Aflalo* (2018) 23 Cal.App.5th 1109, 1112–1113; *Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202, 1222.) Absent a few exceptions, a court will not pass upon moot questions or abstract propositions that cannot affect the matters at issue in the case before it. (*In re David B.* (2017) 12 Cal.App.5th 633, 644 (*David B.*).) Those exceptions for which a court may exercise discretion to resolve otherwise moot issues include: (1) when the case poses an issue of broad public interest that is likely to recur; (2) if it appears the same controversy between the parties is likely to recur; and (3) if a material question remains for the court's decision. (*Ibid.*)

We conclude that Mother's challenge to the trial court's limits on her initial contact with the minor child is moot. Mother does not dispute that the initial 60-day no contact period has expired, and she is now being allowed unsupervised visits with the minor child on Mondays, Wednesdays, and Saturdays under the terms of the July 2022 order. We cannot grant any effective appellate relief as to this portion of the original judgment because we do not have the power to rewind time or undo the past. (Cf. *C.A. v. C.P.* (2018) 29 Cal.App.5th 27, 44 [challenge to court-ordered paternity test was "moot because we cannot undo that which was done"].) This part of Mother's appeal is moot.

Similarly, Mother's challenges to the provisions of the March 2021 judgment limiting her contact with the minor to conjoint therapy and conditioning daytime visitation on the success of conjoint therapy are also

8

moot. Under the terms of the superseding visitation order of July 2022, the trial court has now granted Mother unsupervised daytime visitation rights with the minor child beyond the conjoint therapy sessions. Moreover, the record discloses that the court did not delegate its judicial authority to the conjoint therapist in issuing the December 2021 and July 2022 visitation orders. As Father points out, the trial court explicitly stated in both orders that it "exercised its discretion" in making the findings and orders therein, and in the July 2022 order, it expressly rejected the conjoint therapist's recommendation to delay unsupervised visitation. Because we can no longer grant effective relief as to Mother's challenges relating to those superseded portions of the March 2021 judgment, we find them moot.

Mother argues that even if we conclude those issues are moot, we should exercise our discretion to decide them. We decline to do so. The mooted issues are case- and fact-specific and do not implicate broad public interest concerns which are likely to recur; nor do they have precedential consequence in future litigation generally. (See *David B., supra*, 12 Cal.App.5th at p. 654 ["We see no basis for exercising discretion to address the fact-specific questions whether [appellant] was described by [Welfare and Institutions Code] section 300, and whether the juvenile court's determination on that point is supported by substantial evidence."]; *In re Andres G.* (1998) 64 Cal.App.4th 476, 484 [declining to address merits of moot challenge of order requiring parent's psychological evaluation because such orders are "so case[-]specific that little use would be served" by review of the matter in any given case].) The same controversies are also unlikely to recur between the parties because the trial court's reasons for initially imposing limits on Mother's visitation—the sensitivity surrounding the minor child's transfer of custody and Mother's past non-compliance with court orders—are

9

no longer present.  No material questions remain for the court's decision on these issues.  Accordingly, we decline to address the merits of Mother's appeal of the visitation restrictions in the March 2021 judgment.

II

One non-moot issue remains for the court's decision.  Mother argues that the trial court violated section 3190 by ordering her to participate in conjoint and individual therapy without limiting the therapy's duration to no more than one year.  We agree.

Section 3190 authorizes a court to order parents in a custody or visitation dispute, and the minor child, to participate in outpatient counseling for not more than one year, provided the court makes specific findings regarding the best interest of the child, the financial burden created by the order, and who should bear the cost of counseling if applicable. (§ 3190, subds. (a), (c), & (d).)  Section 3190 and its precursor, former Civil Code section 4608.1 (repealed by Stats. 1992, ch. 162, § 3, eff. Jan. 1, 1994), were enacted to address due process concerns associated with requiring a parent to undergo involuntary therapy or counseling in a family court setting outside of dependency jurisdiction.  (*In re Chantal S.* (1996) 13 Cal.4th 196, 207, 210–211; *In re Katherine M.* (1994) 27 Cal.App.4th 91, 99–100.)  Among the Legislature's chief concerns was that any counseling order be of limited duration and automatically expire.  (See *Katherine M.,* at p. 100.)

Section 3190, subdivision (a) explicitly limits the permissible duration of court-ordered outpatient counseling to "not more than one year." Subdivision (e) further provides: "The court shall not order the parties to return to court upon the completion of counseling. Any party may file a new order to show cause or motion after counseling has been completed, and the court may again order counseling consistent with this chapter."

We conclude that the lack of durational limits on the court-ordered conjoint and individual therapy violates section 3190, subdivision (a).[5] Specifically, the court required Mother and the minor child to participate in conjoint therapy "until released by the therapist" and required Mother to attend individual therapy "until her therapist feels it is no longer needed." The judgment provided no end date for the required therapy, and it appears from the December 2021 order that at least the conjoint therapy was still ongoing at that time.[6] Similar open-ended counseling orders have been found to violate a parent's due process rights. (See *In re Marriage of Matthews* (1980) 101 Cal.App.3d 811, 817–818 [absent legislative authorization for counseling of indefinite duration as a condition of visitation, such order violates parent's due process rights]; *Camacho v. Camacho* (1985) 173 Cal.App.3d 214, 221 [same].)

---

[5]  Mother has not challenged the sufficiency of the trial court's findings under section 3190, so we need not address that here. (*Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 600 ["Matters not properly raised or that are lacking in adequate legal discussion will be deemed forfeited."].)

[6]  Over one year has passed from the date of the March 2021 judgment, but there is no indication in the record that Mother's court-ordered conjoint and individual therapy has been terminated.

Father claims Mother waived or invited this error by not objecting to the court's order in May 2018 requiring that Father participate in conjoint therapy, and again by joining a stipulation and order in October 2018 requiring Father's individual therapy—neither of which included a durational limit. We find no waiver. The orders in May and October 2018 were separate orders from the one being appealed, and they required only *Father's* participation in therapy. The fact that Mother did not object to those orders does not preclude her from appealing the lack of durational limits in the March 2021 judgment, which requires *her* to participate in therapy indefinitely. Furthermore, because the court exceeded its legal authority under section 3190 as a matter of law, the error is not waived, even though Mother did not raise the objection to the trial court. (See *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 59 ["a party does not waive objections to legal errors appearing on the face of the statement of decision by failing to respond to it"].) And contrary to Father's contention, the error is not harmless because had the court complied with section 3190, the required therapy would have been restricted to one year or less.

Finally, we reject Father's contention that the court-ordered *conjoint* therapy does not constitute "counseling" within the meaning of section 3190 because section 3190 "is designed to address an individual's issues like 'mental health or substance abuse.' " Section 3190 expressly states that a court "may require parents . . . *and* the minor child" to participate in counseling services "*including, but not limited to*, mental health or substance abuse services[.]" (Italics added.) Nothing in the statutory language supports Father's interpretation of section 3190 as only applying to individual therapy as opposed to conjoint therapy.

12

DISPOSITION

The judgment is modified to limit the duration of Mother's court-ordered participation in conjoint and individual therapy to one year. Because the one-year period has already passed, Mother will no longer be required to participate in conjoint or individual therapy after issuance of the remittitur, unless the trial court enters a new order upon request of a party under Family Code section 3190, subdivision (e). Nothing in this opinion shall preclude Mother from continuing to participate voluntarily in conjoint or individual therapy. The judgment is affirmed as so modified. The parties shall bear their own costs on appeal.

BUCHANAN, J.

WE CONCUR:

HALLER, Acting P. J.

DATO, J.

13